THE HONORABLE JUDGE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| N.C., individually and on behalf of A.C., a minor,<br><br>Plaintiff,<br><br>v.<br><br>PREMERA BLUE CROSS,<br><br>Defendant. | Case No. 2:21-cv-01257-JHC<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**<br><br>Noted for Consideration:<br>August 5, 2022<br><br>**ORAL ARGUMENT REQUESTED** |

PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR SUMMARY JUDMENT - Page 1

**BRIAN S. KING, ATTORNEY AT LAW**
420 East South Temple; Suite 420
Salt Lake City, UT 84111
Tel. (801) 532-1739 Fax (801)532-1936

# ARGUMENT

## I. PREMERA DOES NOT DISPUTE THE STANDARD OF REVIEW FOR THIS CASE IS *DE NOVO*.

In both her Opening Memorandum[1] and her Opposition Memorandum in Support of Motion for Summary Judgment,[2] N.C. provided several reasons for why the standard of review on both causes of action in this case is *de novo*. Premera does not dispute this in its Opposition Memo.[3] Consequently, this Court will review both causes of action under a *de novo* standard of review.

## II. THE PRELITIGATION APPEAL RECORDS DEVELOPED BY THE PARTIES DEMONSTRATES N.C. HAS SHOWN BY A PREPONDERANCE OF THE EVIDENCE THAT A.C.'s TREATMENT WAS MEDICALLY NECESSARY AND SHE IS ENTITLED TO PAYMENT OF BENEFITS FOR HIS TREATMENT.

Ninth Circuit case law is clear in stating that, whether the standard of review is *de novo* or abuse of discretion, the review by the district court is limited to the record developed by the parties in the prelitigation appeal process.[4] In this case the Record contains what information was exchanged between the parties. N.C. outlined in detail in her Opening and Opposition Memos the information in the correspondence between the parties and the medical records showing why A.C.'s treatment at CALO was medically necessary.

In response, Premera generates a flurry of allegations. Some are factual but many are not. For example, Premera alleges that "[n]o psychiatrist evaluated A.C. at any time to determine whether residential treatment was medically necessary."[5] This is not just lacking foundation in the facts in

---

[1] ECF Doc. No. 53 at 14-15.
[2] ECF Doc. No. 61 at 2-4.
[3] ECF Doc. No. 59.
[4] *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 944 (9th Cir. 1995)
[5] *Id*. at 1.

PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION
FOR SUMMARY JUDMENT - Page 2

**BRIAN S. KING,** ATTORNEY AT LAW
420 East South Temple; Suite 420
Salt Lake City, UT 84111
Tel. (801) 532-1739 Fax (801)532-1936

the record, it is directly at odds with them. In reality, A.C. met with a psychiatrist at least once a month, and the psychiatrist consistently stated he needed to "continue residential treatment."[6]

For another example, Premera asserts that A"[t]here is no evidence of any change in A.C.'s medical condition at the Academy."[7] Not true. A.C.'s treatment team frequently recorded changes to his condition.[8]

For a third example, Premera alleges that "the Academy's own records demonstrate that [A.C.] was not suffering any of the symptoms that the InterQual criteria identify as establishing medical necessity."[9] Again, not true – and no reasonable and principled reader could draw that conclusion from the record. In reality, A.C. met many of the InterQual criteria for residential treatment. As stated in his master treatment plans, A.C. suffered from, "Major depressive disorder, Recurrent episode, Moderate", "Attention-deficit/hyperactivity disorder, Combined presentation", "Reactive attachment disorder", and "Posttraumatic stress disorder."[10] Additionally, A.C.'s history that led to his admission to CALO, explains the necessity for residential treatment,

> Parents report a pattern of declining behavior and functioning over time, starting at least 3 years ago (2016), but getting worse and worse. [A.C.] has long term diagnoses of PTSD, DMDD, GAD and a recent diagnosis of ADHD. [A.C.] has had difficulty maintain his attendance at school the past couple of years and recently became more depressed. Over the past 2 months, [A.C] has gotten behind with homework, even with support from school, and his attendance started to slip to the point he really wasn't going to school. He has missed 12 days in the past month. [A.C.] hasn't been able to do

---

[6] *See, e.g.,* Rec. 3696; *see also* 3628-3632, 3648-3652, 3677-3581, 3712-3716, 3724-3728, 3739-3743, 3798-3802, 3839-3842, 3863-3867, 3882-3885, 3906-3910, 3927-3930, 3999-4002, 4020-4023, 4057-4060, 4084-4087, 4131-4134, 4156-4160, 4176-4179, 4225-4227.
[7] ECF Doc. No. 59 at 1.
[8] *See, e.g.*, Rec.1289-1294, 1414-1419, 1492-1497, 3565-3570, 3887-3893, 4026-4032, 4180-4186.
[9] ECF Doc. No. 59 at 1.
[10] Rec. 1289.

PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION
FOR SUMMARY JUDMENT - Page 3

**BRIAN S. KING,** ATTORNEY AT LAW
420 East South Temple; Suite 420
Salt Lake City, UT 84111
Tel. (801) 532-1739 Fax (801)532-1936

> anything at home either. [A.C.] has been making suicidal statements, although they seemed more provocative in nature than act. [A.C.] has been struggling with self-care. [A.C.]'s psychiatrist feels a residential placement is appropriate at this time. [A.C.] is frequently irritable and can become extremely angry very easily. He can go from being loving to angry and back. Mood recently has also been very depressed. [A.C.] has always been very anxious and has a lot of anticipatory anxiety about school. [A.C.] becomes very anxious over changes, needs to know schedules ahead of time. [A.C.] has been struggling with nightmares consistently.[11]

This demonstrates that A.C. met the following InterQual Criteria for admission:

- Unable to maintain behavioral control for more than 48 hours
    - Persistent or repetitive over at least 6 months
- Angry outbursts causing harm to self or others or property
- Impairment in daily functioning.

Premera also dissembles when it states that "there are no physician, NP [nurse practitioner], or PA [physician's assistant] evaluations after 6/26."[12] In reality, A.C. was evaluated by both a psychiatrist and a nurse practitioner at least monthly.[13] Again, Premera's allegations are not just unfounded based on the facts in the record – they are actively disproven by them.

Several of Premera's other statements are similarly untrue, but, setting that aside for the moment, a significant problem in this case for Premera is that, aside from often being unmoored from the information in the medical records and communications between the parties, its facts and arguments rely on information and reasons for denial that were never provided by Premera in response to N.C.'s appeal letters. Under ERISA's claims procedure requirements, Premera

---

[11] Rec 1289.
[12] ECF Doc. No. 59 at 3.
[13] *See, e.g.,* Rec. 3696; *see also* 3628-3632, 3648-3652, 3677-3581, 3712-3716, 3724-3728, 3739-3743, 3798-3802, 3839-3842, 3863-3867, 3882-3885, 3906-3910, 3927-3930, 3999-4002, 4020-4023, 4057-4060, 4084-4087, 4131-4134, 4156-4160, 4176-4179, 4225-4227.

PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION
FOR SUMMARY JUDMENT - Page 4

**BRIAN S. KING, ATTORNEY AT LAW**
420 East South Temple; Suite 420
Salt Lake City, UT 84111
Tel. (801) 532-1739 Fax (801)532-1936

was required to provide to N.C. "the specific reasons" for the denial of the claim.[14] Insurers and ERISA plans are not permitted to raise for the first time in litigation new reasons for why medical claims should be denied.[15] Information that provides the basis for denying a claim must be provided to a claimant in the prelitigation appeal process.[16]

This Court has ruled, aligned with Ninth Circuit authority, that even under a *de novo* review supplementing the prelitigation appeal records should occur only under "exceptional circumstances" and where the facts "clearly establish the evidence is necessary to conduct an adequate de novo review."[17] This is in line with the well-established rule that parties to ERISA denial of benefits litigation must carry out a prelitigation appeal process that is adequate to allow for judicial review.[18] Claimants should not be required to address new information or reasons for denial presented for the first time in litigation. "Such conduct prevents ERISA plan administrators and beneficiaries from having a full and meaningful dialogue regarding the denial of benefits."[19]

As applied to the facts of this case, the information provided Premera by N.C. over the course of the prelitigation appeal process demonstrates the medical necessity of A.C.'s treatment at CALO. Premera issued its initial denial letter on September 3, 2019,[20] and it contained a variety of comments and reasons for denial. N.C. provided an extensive response in her February

---

[14] 29 U.S.C. § 1133(1)
[15] *Harlick v. Blue Shield of Cal.,* 686 F.3d 699, 719-279 (9th Cir. 2012).
[16] *Bunger v. Unum Life Ins. Co. of America,* 299 F.Supp.3d 1145, 1161 (W.D. Wash. 2018)
[17] *Bunger,* 299 F.Supp.3d at 1158 (citing *Mongeluzo,* 46 F.3d at 944.
[18] *Mitchell v. CB Richard Ellis LTD Plan,* 611 F.3d 1192, 1199, n. 2 (9th Cir. 2010).
[19] *Glista v. UNUM Life Ins. Co. of America,* 378 F.3d 113, 129 (1st Cir. 2004). *See also* 29 C.F.R. 2590.715-2719(b)(2)(ii)(C)(2) in which claim procedure regulations require that before an ERISA plan can issue a final internal adverse benefit determination based on "new or additional rationale," claimants must be provided with a "reasonable opportunity to respond" to that information.
[20] Rec. 1669-1670.

PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION
FOR SUMMARY JUDMENT - Page 5

**BRIAN S. KING, ATTORNEY AT LAW**
420 East South Temple; Suite 420
Salt Lake City, UT 84111
Tel. (801) 532-1739 Fax (801)532-1936

19, 2020,[21] that included letters of medical necessity from various individuals who had treated or had knowledge of A.C.'s condition. An external reviewer evaluated the claim and upheld the denial,[22] concluding that the correct basis for denial was that the severity of A.C.'s condition was not sufficient to justify inpatient treatment and that he could have been treated in a less intensive setting.

N.C. submitted another appeal letter on August 27, 2020 and provided more information and arguments to Premera.[23] In response, Premera issued a final denial letter on September 21, 2020, that was based on narrow grounds: "…[A.C.] does not meet medical necessity criteria for residential level of care from 6/27/2019 forward. [A.C.] has no dangerous psychiatric behaviors, comorbid medical problems, withdrawal symptoms or other gross dysfunction that would necessitate this level of care. It appears that he could be cared for at a lower level of care during this time."[24] This final basis for denial that Premera chose to come to rest on is what this Court must review.

The records demonstrate that this final basis was incorrect. A.C.'s behaviors and functioning had been worsening since at least 2016.[25] He struggled with self-care, discussed suicidal ideation, demonstrated both volatility and depression, and struggled in school.[26] Premera did not grapple with these symptoms in its denial letters, and did not address the reality that A.C.'s condition showed every sign of deteriorating but for the residential treatment he received. Accordingly, the Court should award summary judgment to Plaintiffs.

---

[21] Rec. 12-34.
[22] Rec. 1801-1803; 1998-2001
[23] Rec. 1965-1982.
[24] Rec. 4249
[25] *See, e.g.*, Rec. 778.
[26] *See id.*

PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION
FOR SUMMARY JUDMENT - Page 6

**BRIAN S. KING, ATTORNEY AT LAW**
420 East South Temple; Suite 420
Salt Lake City, UT 84111
Tel. (801) 532-1739 Fax (801)532-1936

## III. PREMERA VIOLATED MHPAEA.

### A. Premera Violates MHPAEA by Requiring Acute Symptomology Before a Patient Can Receive Subacute Mental Health Care – And Its Arguments to the Contrary Are Nonsense.

In *Jonathan Z. v. Oxford Health Plans*, a sister court in the District of Utah held that an insurance claims administrator violates MHPAEA when it requires patients "to exhibit acute symptoms to qualify for RTC care" but does not "require similarly acute symptoms for comparable medical-surgical treatment."[27] The *Jonathan Z.* court noted that while the insurance plan at issue did not violate MHPAEA on its face, the guidelines the defendant claims administrator used to evaluate whether mental health care received at a residential treatment center was medically necessary did violate MHPAEA.[28] The court reasoned that this was the case because the claims administrator "would deny skilled nursing coverage for a medical-surgical patient who presented with acute" symptoms, but "denied mental health care to a patient precisely because he *failed* to present with acute symptoms."[29] In doing so, the *Jonathan Z.* court held, the claims administrator "imposed a more stringent limitation on RTC care that more closely resembled the requirements for acute inpatient mental health care" without imposing a similar limitation on skilled nursing care, thus violating MHPAEA.[30]

Here, Premera does the same thing. For example, Premera requires that a patient seeking residential mental health treatment must have been suffering from symptoms that are "persistent or repetitive for 6 months" before it will provide benefits for the treatment.[31] Premera imposes no such requirement for medical/surgical care received at a skilled nursing facility.

---

[27] 2022 U.S. Dist. LEXIS 121033, *59-63 (D. Utah July 7, 2022).
[28] *Id.*
[29] *Id.* at *62.
[30] *Id.* at *63.
[31] Rec. 1722.

PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION
FOR SUMMARY JUDMENT - Page 7

**BRIAN S. KING, ATTORNEY AT LAW**
420 East South Temple; Suite 420
Salt Lake City, UT 84111
Tel. (801) 532-1739 Fax (801)532-1936

For another example, Premera requires that a patient must be "unable or unwilling to follow instructions" or "unable to maintain behavioral control" to receive residential mental health treatment,[32] but a patient seeking skilled nursing treatment *cannot* be that impaired, but must be able and willing to "actively cooperate."[33]

Premera also requires that a patient's "functional impairment" be "severe" before it will cover residential mental health treatment,[34] but requires only "[f]unctional impairment requiring at least minimum assistance" to cover skilled nursing facility care.[35]

Finally, Premera requires that a patient demonstrate severe weekly mental health symptoms, such as aggressive or assaultive behavior, homicidal ideation, or non-suicidal self-injury before it will continue covering residential mental health treatment.[36] It only ends continued care at a skilled nursing facility if the care becomes "custodial," the patient becomes unwilling to cooperate, or the medical care becomes routine administration.[37]

Just like in *Jonathan Z.*, each of these examples demonstrates that Premera violates MHPAEA by requiring more acute mental health symptoms from patients seeking residential mental health treatment than the medical/surgical symptoms it requires from patients seeking skilled nursing facility treatment. Premera would cover skilled nursing facility treatment for a cooperative patient experiencing a recent functional impairment requiring only minimum assistance whose symptoms stabilized and improved steadily over the course of their treatment. By contrast, Premera would not cover residential mental health treatment unless it is confronted

---

[32] Rec. 1722.
[33] Rec. 6169.
[34] Rec. 1722.
[35] Rec. 6169.
[36] *See* Rec. 1724-26.
[37] Rec. 6169.

PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION
FOR SUMMARY JUDMENT - Page 8

**BRIAN S. KING, ATTORNEY AT LAW**
420 East South Temple; Suite 420
Salt Lake City, UT 84111
Tel. (801) 532-1739 Fax (801)532-1936

with an uncooperative patient experiencing a six-months running severe impairment, who would also need to demonstrate acute symptoms on a weekly basis. There is no reasonable or principled basis to conclude those two scenarios are at "parity."

In response, Premera states that *Jonathan Z.* "does not apply" because it did not directly involve the InterQual Criteria.[38] Premera misapprehends. The Court could easily apply the same logical framework used in *Jonathan Z.* to the InterQual Criteria. If it does so, it will find Premera violated MHPAEA. Besides noting that *Jonathan Z.* did not say the InterQual Criteria violate MHPAEA, Premera does not articulate any reason the logic in *Jonathan Z.* is inapposite here.

Premera also points to *Julie L. v. Excellus Health Plan*,[39] and argues that case is analogous because "[h]ere, as in *Julie L.*, Premera concluded that A.C.'s 14-month stay was not medically necessary because he could be treated in a less intensive setting."[40] This was not the holding in *Julie L.*, which instead applied logic very similar to the logic applied in *Jonathan Z.* and determined based on that logic that the defendant claims administrator did *not* actually require acute symptomology for sub-acute mental health care, making its coverage for mental health care comparable to its coverage for analogous medical/surgical care.[41] Again, if the Court applies the same logical framework here it will determine that Premera violated MHPAEA. Accordingly, the Court should grant Plaintiffs' motion for summary judgment.

---

[38] ECF Doc. No. 59 at 17.
[39] 447 F. Supp. 3d 38 (W.D.N.Y. 2020).
[40] ECF Doc. No. 59 at 17.
[41] *See Julie L.*, 447 F. Supp. 3d at 57 (concluding that "there is no ERISA violation simply because the application of the *same evidentiary standards* results in different benefits or coverage between mental health, substance abuse, medical, or surgical conditions" (emphasis added)).

PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION
FOR SUMMARY JUDMENT - Page 9

**BRIAN S. KING, ATTORNEY AT LAW**
420 East South Temple; Suite 420
Salt Lake City, UT 84111
Tel. (801) 532-1739 Fax (801)532-1936

**B. As the Parity Act Defines Analogues, Inpatient Hospice is a Medical/Surgical Analogue to Residential Mental Health Treatment.**

The regulations enacting MHPAEA require that all benefits provided by medical plans be placed into one of six classifications: inpatient, in-network; inpatient, out-of-network; outpatient in-network; outpatient, out-of-network; emergency care; and prescription drugs.[42] In collecting comments to prepare the Final Rules, the Departments of Labor, Health and Human Services, and Treasury struggled with how to deal with the "scope of services" for treatment that did not fall neatly into one of the six categories.[43] They referred to several different types of care, residential treatment among them, as "intermediate" services along the continuum of care for mental health and substance use disorders. The Departments specifically stated that they, "did not intend that plans and issuers could exclude intermediate levels of care"[44] from the scope of MHPAEA.[45]

In response, Premera notes that those regulations do not mention "hospice care," then argues that because of this, "hospice and residential treatment are not analogous."[46] Premera advances no argument concerning which category hospice care should go into, nor does it even engage with the six categories at all. Plaintiffs argue hospice care should be considered to be intermediate inpatient care, just like residential treatment. In the absence of a meaningful counter-argument, the Court should determine inpatient hospice care is analogous to residential treatment for purposes of MHPAEA.

---

[42] 78 Fed. Register no. 219, p. 68241, fn. 4; 29 C.F.R. § 2590.712(c)(2)(ii)(A)(1)-(6);
[43] 78 Fed. Register no. 209, p. 68246
[44] Id.
[45] 78 Fed. Register no. 209, p. 68246-68247
[46] ECF Doc. No. 59 at 22.

PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION
FOR SUMMARY JUDMENT - Page 10

**BRIAN S. KING, ATTORNEY AT LAW**
420 East South Temple; Suite 420
Salt Lake City, UT 84111
Tel. (801) 532-1739 Fax (801)532-1936

**C. Because <u>Two</u> Sets of Criteria Is More than <u>One</u> Set of Criteria, Premera Violates MHPAEA When It Comes to Inpatient Hospice vs. Residential Mental Health Treatment.**

Premera requires that Plaintiffs seeking residential mental health treatment satisfy two sets of criteria before they will receive coverage (the Plan's terms and the InterQual Criteria). It only requires that Plaintiffs seeking analogous medical/surgical inpatient hospice care satisfy one set of criteria (the Plan's terms). This creates a disparity because two hurdles between a patient and treatment is more than one hurdle. Premera does not meaningfully engage with this argument, but instead points out it places a 14-day limit on inpatient hospice stays. This does not change the fact that Premera imposes more barriers to residential treatment (two sets of criteria) than it does to inpatient hospice treatment (one set of criteria). Accordingly, the Court should award summary judgment to Plaintiffs.

**D. Premera Misstates *M.S. v. Premera Blue Cross*, And Even if It Did Not, Also Misunderstands How Equitable Remedies Work.**

Premera maintains that *M.S. v. Premera Blue Cross*,[47] a case it recently lost on MHPAEA, provides that plaintiffs cannot recover under MHPAEA because "a benefits recovery would make them whole."[48] That was not actually the holding in *M.S.* Instead, the court in *M.S.* determined that Premera had violated MHPAEA, memorialized that determination in a written order (*i.e.*, provided the plaintiffs with the same sort of declaratory relief Plaintiffs seek in this case), then determined that the plaintiffs were not entitled to further equitable remedies because it reasoned that even if the guidelines violating MHPAEA were removed and the case had been re-evaluated purely on the remaining Plan language, the plaintiffs would not prevail.[49] The Court

---

[47] 2022 U.S. Dist. LEXIS 110975 (D. Utah June 21, 2022).
[48] ECF Doc. No. 59 at 24.
[49] *See generally M.S.*, 2022 U.S. Dist. LEXIS 110975 (going through this analysis for essentially the entire opinion).

PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION
FOR SUMMARY JUDMENT - Page 11

**BRIAN S. KING, ATTORNEY AT LAW**
420 East South Temple; Suite 420
Salt Lake City, UT 84111
Tel. (801) 532-1739 Fax (801)532-1936

could still provide plaintiffs with equitable relief based on the same process (*i.e.*, by discarding the InterQual Criteria and evaluating Plaintiffs' claim using the medical necessity language in the Plan), and the Court is also certainly capable of providing declaratory relief. Accordingly, Defendants' argument misapprehends the law.

E.   **Premera's Other Arguments Are Red Herrings.**

Premera devotes a significant portion of its brief to performing its own "side-by-side comparison" between the InterQual Criteria for residential treatment and skilled nursing facilities services and to touting its "nonquantitative treatment limitations analysis" in which, after much self-reflection, it told itself that it does not violate MHPAEA. Because neither of these analyses actually engages with the disparities Plaintiffs pointed out in their motion, they are not relevant here. The Court should not allow itself to be distracted by red herrings, but should instead determine whether Plaintiffs have established that Premera violated MHPAEA on the basis of the disparities Plaintiffs brought up in their briefs.

RESPECTFULLY SUBMITTED this 5th day of August 2022.

       */s/ Eleanor Hamburger*
Eleanor Hamburger, WSBA #26478
SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303
Fax (206) 223-0246
Email: ehamburger@sylaw.com

       */s/ Brian S. King*
Brian S. King, *Admitted Pro Hac Vice*
BRIAN S. KING, P.C.
420 E. South Temple, Suite 420
Salt Lake City, UT 84111
Tel. (801) 532-1739
Fax (801) 532-1936
Email: brian@briansking.com

PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION
FOR SUMMARY JUDMENT - Page 12

**BRIAN S. KING,** ATTORNEY AT LAW
420 East South Temple; Suite 420
Salt Lake City, UT 84111
Tel. (801) 532-1739  Fax (801)532-1936

## CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury under the laws of the State of Washington and the United States, that on the 5th day of August, 2022, the foregoing document was presented to the Clerk of the Court for filing and uploading to the Court's CM/ECF system. In accordance with the ECF registration agreement and the Court's rules, the Clerk of the Court will send email notification of this filing to all attorneys in this case.

DATED: August 5, 2022

/s/ Brian S. King
Brian S. King, *pro hac vice*

PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION
FOR SUMMARY JUDMENT - Page 13

**BRIAN S. KING, ATTORNEY AT LAW**
420 East South Temple; Suite 420
Salt Lake City, UT 84111
Tel. (801) 532-1739 Fax (801)532-1936