THE HONORABLE JOHN H. CHUN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

N.C., individually and on behalf of A.C. a minor,

Plaintiff,

vs.

PREMERA BLUE CROSS;

Defendants.

Case No. 2:21-cv-01257-JHC

**DEFENDANT PREMERA BLUE CROSS'S SUPPLEMENTAL BRIEFING IN RESPONSE TO DKT. 67**

**NOTE ON MOTION CALENDAR**: **MARCH 6, 2023**

DEFENDANT PREMERA BLUE CROSS'S SUPPLEMENTAL BRIEFING IN RESPONSE TO DKT. 67
KILPATRICK TOWNSEND 771104874 3

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

The Court has requested the parties: (1) "[P]rovide supplemental briefing on which medical necessity guidelines the Court should look to (*e.g.*, Milliman, CASII, etc.) and why"; and (2) "include in their briefing any cases on *de novo* review where courts have looked outside the administrative record in defining 'generally accepted standards of medical practice' (or similar terms), and/or any cases on *de novo* review where courts have specifically found they are unable to do so." Dkt. 67.

The Court should consider the InterQual guidelines in this case. The Ninth Circuit is clear that where review is *de novo*, ERISA allows consideration of extra-record evidence only in exceptional situations not applicable here.

## I. Where *de novo* review applies, courts will consider extra-record evidence only in exceptional circumstances that do not exist here.

Where the Court reviews an ERISA decision *de novo*, the Court should consider extrinsic evidence only in "exceptional circumstances." *Opeta v. Nw. Airlines Pension Plan*, 484 F.3d 1211, 1217 (9th Cir. 2007). "In most cases only the evidence that was before the plan administrator at the time of determination should be considered." *Id.* The court should consider extra-record evidence "only when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision." *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 943 (9th Cir. 1995). This is because "to further ERISA's policy of keeping proceedings inexpensive and expeditious, the Ninth Circuit has placed significant restrictions on district courts' ability to consider evidence outside the administrative record." *Gonda v. Permanente Med. Group, Inc.*, 300 F.R.D. 609, 613 (N.D. Cal. 2014).

### A. Since oral argument, the Ninth Circuit has reemphasized that the Court should not consider extra-record evidence of generally accepted standards of care.

Courts do not consider extrinsic evidence of generally accepted standards of care where the plan referred to medical necessity guidelines (also known as a medical policy) that comport with generally accepted standards of care and the plan's terms. In *Wit v. United Behav. Health*, 58 F.4th 1080 (9th Cir. 2023), the district court held a ten-day bench trial with multiple expert

DEFENDANT PREMERA BLUE CROSS'S SUPPLEMENTAL
BRIEFING IN RESPONSE TO DKT. 67 - 1
KILPATRICK TOWNSEND 771104874 3

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

witnesses and found that plan administrator United's "Guidelines are more restrictive than generally accepted standards of care." *Wit v. United Behav. Health*, No. 14-CV-02346-JCS, 2019 WL 1033730, at *6 (N.D. Cal. Mar. 5, 2019), *aff'd in part, rev'd in part and remanded,* 58 F.4th 1080 (9th Cir. 2023); *see also Wit*, 58 F.4th at 1090.

On appeal, the Ninth Circuit reversed the district court, and held that it erred in looking outside the administrative record for "generally accepted standards of care." *Wit*, 58 F.4th at 1097.[1] The Ninth Circuit held that the district court erred in rejecting United's medical guidelines, emphasizing that United's guidelines were consistent with ERISA and the plan's medical necessity requirements: "While the GASC [generally accepted standards of care] precondition mandates that a treatment be consistent with GASC as a starting point, it does not compel [the plan] to cover all treatment that is consistent with GASC." *Id.* The Ninth Circuit held that United's internally-developed medical necessity guidelines could properly impose requirements on top of the GASC: "Nor does the exclusion [*i.e.,* the consistency with GASC requirement]—or any other provision in the Plans—require [the plan administrator] to develop Guidelines that mirror GASC." *Id.*

Therefore, "generally accepted standards of care" and medical necessity guidelines are not the same thing. Medical necessity guidelines must be consistent with the generally acceptable standards of care. But they may properly be more restrictive than generally accepted standards of care where, as here, the plan's definition of medical necessity imposes additional requirements. Thus, *Wit* held that the district court erred in rejecting United's guidelines and imposing something else of its choosing. *See Wit*, 58 F.4th at 1097.

Here, as in *Wit*, the plan's definition of medical necessity has "generally accepted standards of medical care" as only one requirement—among others—of the treatment for which a benefit is sought:

> Those covered services and supplies that a physician, exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating,

---

[1] In *Wit*, the court did not consider the case *de novo*, but nor was the standard abuse of discretion. The Court "assum[ed] the conflicts of interest [on the part of United] found by the district court warrant heavy skepticism." *Id.* at 1097.

DEFENDANT PREMERA BLUE CROSS'S SUPPLEMENTAL
BRIEFING IN RESPONSE TO DKT. 67 - 2
KILPATRICK TOWNSEND 77104874 3

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

diagnosing or treating an illness, injury, disease or its symptoms, and that are:

• In accordance with generally accepted standards of medical practice;
• Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's illness, injury or disease; and
• Not primarily for the convenience of the patient, physician, or other health care provider, and not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury or disease.

For these purposes, "generally accepted standards of medical practice" means standards that are based on credible scientific evidence published in peer reviewed medical literature generally recognized by the relevant medical community, physician specialty society recommendations and the views of physicians practicing in relevant clinical areas and any other relevant factors.

R 5949.

### B. Cases considering extra-record evidence of generally accepted standards of care are no longer good law.

In addition to *Wit*, Premera has identified two cases that considered extra-record evidence of generally accepted standards of care: *Jamie F. v. UnitedHealthcare Ins. Co.*, 474 F. Supp. 3d 1052 (N.D. Cal. 2020) and *Andrew C. v. Oracle America Inc. Flexible Benefit Plan*, 474 F. Supp. 3d 1066 (N.D. Cal. 2020). Both of these cases relied on the recently-overturned *Wit* district court, and as a result, they are no longer good law. In *Jamie F.* and *Andrew C.*, both courts rejected the guidelines that United Healthcare used to determine medical necessity. Citing the district court's (now overruled) opinion in *Wit*, these cases both state that United's "Optum Guidelines are not consistent with any generally accepted standards of medical practice" with no further analysis. *Jamie F.*, 474 F. Supp. 3d at 1064; *Andrew C.*, 474 F. Supp. 3d at 1081.

## II. The Court should apply the InterQual Criteria here.

The 2019 *InterQual Criteria BH: Child and Adolescent Psychiatry* are the correct medical guidelines for the Court to examine in order to determine the meaning of generally accepted standards of medical practice. The Court should consider the medical necessity guidelines in the record if they are "nationally recognized" and "widely used." *See Todd R. v. Premera Blue Cross Blue Shield of Alaska*, No. C17-1041JLR, 2021 WL 2911121, at *14 (W.D. Wash. July 12, 2021)

DEFENDANT PREMERA BLUE CROSS'S SUPPLEMENTAL
BRIEFING IN RESPONSE TO DKT. 67 - 3
KILPATRICK TOWNSEND 77104874 3

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

(reviewing de novo, considering only the Milliman Care Guidelines, because "numerous courts and commentators have identified the Milliman Care Guidelines as 'nationally recognized' and 'widely used'"). There is no reason to consider extra-record evidence because the medical community and legal authorities universally support that the InterQual Criteria are the standard of care, and they are consistent with the plan's medical necessity requirement.

A. **The InterQual Criteria are nationally recognized and widely used.**

The Western District of Washington and the Ninth Circuit have repeatedly held that use of medical guidelines, including the InterQual Criteria, "comport[] with generally accepted standards of care." *N.F. v. Premera Blue Cross*, No. C20-0956-JCC, 2021 WL 4804594, at *3-4 (W.D. Wash. Oct. 14, 2021) (relying on the InterQual Criteria in affirming Premera's denial of residential treatment); *Winter ex rel. U.S. v. Gardens Regl. Hosp. and Med. Ctr., Inc.*, 953 F.3d 1108, 1115–16 (9th Cir. 2020) ("The InterQual criteria . . . are reviewed and validated by a national panel of clinicians and medical experts, and represent a synthesis of evidence-based standards of care, current practices, and consensus from licensed specialists and/or primary care physicians."). "The InterQual Criteria are nationally recognized, third-party guidelines designed to help healthcare organizations assess the safest and most clinically appropriate care level for more than 95% of reasons for admission." *Julie L. v. Excellus Health Plan, Inc.*, 447 F. Supp. 3d 38, 43 n.3 (W.D.N.Y. 2020).

"To determine whether a person needs inpatient or outpatient care, most hospitals use one of two systems: the InterQual Criteria or the Milliman Care Guidelines. Both were developed by independent companies with no financial interest in admitting more inpatients than outpatients. The InterQual Criteria were written by a panel of 1,100 doctors and reference 16,000 medical sources." *Id.* "[T]hese types of guidelines have been found to be appropriately relied on by plan administrators." *Id.*; *see also*, *Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc.*, 852 F.3d 105, 114 (1st Cir. 2017) ("BCBS reviewers reasonably consult the InterQual Criteria, which are nationally recognized, third-party guidelines. The criteria provide a sensible structure for analyzing a patient's particular symptoms, diagnoses, risks, and circumstances to determine

DEFENDANT PREMERA BLUE CROSS'S SUPPLEMENTAL
BRIEFING IN RESPONSE TO DKT. 67 - 4
KILPATRICK TOWNSEND 77104874 3

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

what level of medical care is medically necessary.").

The InterQual Criteria Premera used to evaluate Plaintiffs' claims are supported by numerous citations to medical literature and studies in the relevant subject-matter areas, are developed by physicians, are externally peer-reviewed, and are subjected to quality assurance reviews. R 6128-34 (Change Healthcare, "InterQual Clinical Development Process 2017"). In addition, the InterQual Criteria are annually reviewed and revised to reflect current standards of care. *Id.*; *see also*, R 6135-40 (McKesson "InterQual Clinical Criteria Development Process").

### B. The InterQual Criteria are consistent with the plan documents.

Courts have repeatedly held that the InterQual Criteria are consistent with the definition of "medically necessary" similar to plan language at issue here. *See N.F.*, 2021 WL 4804594, at *4 (holding that residential treatment was not medically necessary because the beneficiary's symptoms and lack of psychiatric care did not meet the InterQual requirements for medical necessity). In *N.F.*, this Court held that "[w]hile InterQual's criteria are certainly more specific than the plan, the Court does not find them to be more stringent." *Id.* at *4 (finding that the InterQual Criteria express the "generally accepted standards of care"); *see also*, *M. S. v. Premera Blue Cross*, 553 F. Supp. 3d 1000, 1026 (D. Utah 2021) ("The Family argues C.S.'s treatment at Daniels Academy was a covered benefit because it was 'medically necessary' as defined by the Plan language and under the relevant InterQual Criteria. The court disagrees and concludes this argument is not supported by a preponderance of the evidence.").

### III. The Court should not consider CASII or other extra-record standards.

The Court's order mentions the CASII assessment tool, which counsel for Plaintiffs argued that the district court in *Wit* ultimately applied. The Ninth Circuit reversed this. *Wit*, 58 F.4th at 1097. Premera is unaware of any court that has relied on CASII to determine medical necessity. On the contrary, in *Todd R*, No. C17-1041JLR, 2021 WL 2911121, at *10, the Plaintiffs made the same argument, but the Honorable James Robart rejected it and upheld Premera's denial.

DEFENDANT PREMERA BLUE CROSS'S SUPPLEMENTAL
BRIEFING IN RESPONSE TO DKT. 67 - 5
KILPATRICK TOWNSEND 77104874 3

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

**IV. The Court should not consider extra-record standards, but if it did, it should consider Milliman.**

As discussed above, there is no need for the Court to consider extra-record standards. But here, the other nationally recognized standards, Milliman, would also support a finding that A.C.'s stay was not medically necessary. The requirements are summarized in *Todd R.* and attached hereto. *Todd R*., WL 2911121, at *3–4; Exhibit A. Here, there is no evidence that A.C. satisfied any of these requirements. A.C. did not receive any psychiatric evaluation at the Academy to determine whether residential treatment was appropriate for his condition. In the Initial Treatment Plan, not issued until September 2019, there is a brief note stating that "[t]here were no indicators of delusional or psychotic processes. Recent and remote memory appeared intact." R 675. The Academy's records state repeatedly that A.C. denied suicidal ideation, and there is no record of any suicide attempts before or after the Academy. R 406, 1658, 1659, 1663, 1975, 2179, 3212, 3035. The Academy notes contain brief notes from observations of A.C. during activities, and his medications, and these all show that A.C. could have been treated at a lower level of intensity. *E.g.,* R 3696; R 351, R 328.

DATED this 6th day of March, 2023.

KILPATRICK TOWNSEND & STOCKTON LLP

By  /s/ Gwendolyn C. Payton
 Gwendolyn C. Payton, WSBA No. 26752
 gpayton@kilpatricktownsend.com
 1420 Fifth Ave., Suite 3700
 Seattle, WA 98101
 Telephone: (206) 626-7714
 Facsimile: (206) 623-6793

*Counsel for Defendant Premera Blue Cross*

I certify that this memorandum contains 2,016 words, in compliance with the Local Civil Rules.

DEFENDANT PREMERA BLUE CROSS'S SUPPLEMENTAL BRIEFING IN RESPONSE TO DKT. 67 - 6
KILPATRICK TOWNSEND 77104874 3

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

# CERTIFICATE OF SERVICE

I certify that on the date indicated below I caused a copy of the foregoing document, DEFENDANT PREMERA BLUE CROSS'S SUPPLEMENTAL BRIEFING IN RESPONSE TO DKT. 67, to be filed with the Clerk of the Court via the CM/ECF system. In accordance with their ECF registration agreement and the Court's rules, the Clerk of the Court will send e-mail notification of such filing to the following attorneys of record:

| | |
|---|---|
| **Eleanor Hamburger**<br>SIRIANNI YOUTZ SPOONEMORE HAMBURGER<br>3101 WESTERN AVENUE STE 350<br>SEATTLE, WA 98121<br>206-223-0303<br>Fax: 206-223-0246<br>Email: ehamburger@sylaw.com | ☒ by CM/ECF<br>☐ by Electronic Mail<br>☐ by Facsimile Transmission<br>☐ by First Class Mail<br>☐ by Hand Delivery<br>☐ by Overnight Delivery |
| **Brian Smith King**<br>**Brent J. Newton**<br>**Samuel Martin Hall**<br>BRIAN S KING ATTORNEY AT LAW<br>420 E SOUTH TEMPLE STE 420<br>SALT LAKE CITY, UT 84111<br>801-532-1739<br>Fax: 801-532-1936<br>Email: brian@briansking.com<br>Email: brent@briansking.com<br>Email: samuel@briansking.com | ☒ by CM/ECF<br>☐ by Electronic Mail<br>☐ by Facsimile Transmission<br>☐ by First Class Mail<br>☐ by Hand Delivery<br>☐ by Overnight Delivery |

DATED this 6th day of March, 2023.

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ Gwendolyn C. Payton*
    Gwendolyn C. Payton, WSBA #26752

*Counsel for Defendant Premera Blue Cross*

CERTIFICATE OF SERVICE - 7

KILPATRICK TOWNSEND 77104874 3

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946