THE HONORABLE JUDGE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| N.C., individually and on behalf of A.C., a minor,<br><br>Plaintiff,<br><br>v.<br><br>PREMERA BLUE CROSS,<br><br>Defendant. | Case No. 2:21-cv-01257-JHC<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEFING ON MOTION FOR SUMMARY JUDGMENT**<br><br>Noted for Consideration:<br>March 6, 2023 |

Plaintiff N.C. hereby submits her supplemental briefing regarding the appropriate medical necessity guidelines.[1] The Court can resolve the medical necessity issue by using the information and guidelines currently contained in the prelitigation record. To the degree that the Court finds that the InterQual criteria deviate from generally accepted standards of medical practice and/or violate the Mental Health Parity and Addiction Equity Act, the Court can use its equitable powers to interpret the criteria without any offending acute symptom requirements. If the Court determines that it must go beyond the record to consider other criteria, Plaintiffs

---

[1] ECF Doc. 67.

PLAINTIFF'S SUPPLEMENTAL
BRIEFING - Page 1

**BRIAN S. KING**, ATTORNEY AT LAW
420 East South Temple; Suite 420
Salt Lake City, UT 84111
Tel. (801) 532-1739 Fax (801)532-1936

recommend the the CASII criteria, as they represent the alternative guidelines that were suggested during the prelitigation appeal process and have been accepted by another court.

## I. THE COURT NEED NOT LOOK BEYOND THE CURRENT PRELITIGATION RECORD TO RESOLVE THE GENERALLY ACCEPTED STANDARDS OF MEDICAL PRACTICE CLAIM.

The Ninth Circuit has warned against the practice of a district court adopting a new rationale or analysis that was not considered during the prelitigation appeal process. *In Collier v. Lincoln Life Assur. Co. of Boston*,[2] the Ninth Circuit reversed a district court who had applied a new rationale based upon the credibility of certain evidence that had not been a basis for the decision during the prelitigation appeal process. In *Collier*, the Ninth Circuit rejected the notion that the district court had to make a credibility determination as part of its de novo review because credibility had not been a part of the underlying decision-making process.

> The court must refrain from fashioning entirely new rationales to support the administrator's decision. Such an approach would evade ERISA's protections for the same reasons a plan administrator undermines ERISA's protections when asserting new arguments for the first time in litigation. *See, e.g., Harlick*, 686 F.3d at 720.[3]

The prelitigation appeal record provides the evidence the Court needs to resolve the question of medical necessity. De novo review asks whether there is sufficient evidence to show that the Plaintiff was entitled to benefits under the terms of the Plan.[4] In relevant part, the Plaintiff set forth the following argument in her motion for summary judgment:

> Generally accepted standards of medical practice for the mental health treatment of adolescents are identified by AACAP's Practice Parameters. The parameters are designed to provide clinicians with assessment and

---

[2] *Collier v. Lincoln Life Assur. Co. of Boston*, 53 F.4th 1180, 1188-1189, 2022 U.S. App. LEXIS 32042, *19-21.
[3] *Id.* at *1188.
[4] *Muniz v. Amec Constr. Mgmt.*, 623 F.3d 1290, 1294 (9th Cir. 2010).

PLAINTIFF'S SUPPLEMENTAL
BRIEFING - Page 2

**BRIAN S. KING,** ATTORNEY AT LAW
420 East South Temple; Suite 420
Salt Lake City, UT 84111
Tel. (801) 532-1739 Fax (801)532-1936

treatment recommendations for child and adolescent psychiatric disorders and with principles guiding the general and special assessment of children, adolescents, and their families, and the management of children and adolescents with special mental health needs.[5] The AACAP recommends residential level of treatment in situations:

> When the treating clinician has considered less restrictive resources and determined that they are either unavailable or not appropriate for the patient's needs, it might be necessary for a child or adolescent to receive treatment in a psychiatric residential treatment center (RTC). In other cases, the patient may have already received services in a less restrictive setting and they have not been successful.[6]

But these arguments were not new to litigation. The Plaintiff raised AACAP as the proper criteria during the prelitigation appeal process when assessing a patient who was diagnosed with Reactive Attachment Disorder ("RAD").[7] Because the AACAP alternative had already been raised and the question has been sufficiently litigated for the Court to resolve any issue of fact, the Court need not go beyond the criteria already included in the record. In litigation, Plaintiff expanded on the AACAP approach and produced the standard that residential treatment is appropriate when lower levels of care have either failed or would otherwise be insufficient. Plaintiff incorporates all of the arguments in her summary judgment briefing and suggests that sufficient facts and arguments exist to prevail on the current record before the Court.

This approach is consistent with the premise that "the question of what the generally accepted standards [are] is a question of fact" for the Court to determine.[8] Furthermore the Second Circuit has held that it is "beyond the province of the court on a motion for summary

---

[5] Practice Parameters, Principles, Guidelines and Resource Centers, AACAP, available at https://tinyurl.com/bdhcf8h3 (last accessed July 7, 2022).
[6] Principles of Care for Treatment of Children and Adolescents with Mental Illnesses in Residential Treatment Centers, AACAP, https://tinyurl.com/39w939j3 (last accessed July 7, 2022); This quotation is found on pages 19-20 of ECF Doc. 53 (one footnote omitted).
[7] Rec. 20.
[8] *Tewksbury v. Dowling*, 169 F. Supp. 2d 103, 112 (E.D.N.Y. 2001).

PLAINTIFF'S SUPPLEMENTAL BRIEFING - Page 3

**BRIAN S. KING, ATTORNEY AT LAW**
420 East South Temple; Suite 420
Salt Lake City, UT 84111
Tel. (801) 532-1739 Fax (801)532-1936

judgment to decide between the experts' competing testimony on the question of what were the generally accepted standards in the medical community as to the circumstances that warrant a physician's order of emergency involuntary commitment."[9] And here, the Court need not engage in a battle of experts where the medical records within the prelitigation appeal record provide the necessary proof that A.C.'s treatment was medically necessary and no extra record expert testimony was produced.

This is especially true when other Courts have found that acute symptoms are inappropriate requirements for subacute care.[10] To some degree, the MHPAEA cause of action informs the medical necessity cause of action once any offending language is removed. Plaintiff identified several discrepancies that demonstrate a MHPAEA violation.

| Skilled Nursing Facilities | Residential Treatment Centers |
| --- | --- |
| Patient needs to actively cooperate Rec. 6169 | Patient is unable or unwilling to follow instructions, Patient unable to maintain behavioral control. Rec. 1722 |
| Functional impairment requiring at least minimum assistance. Rec. 6169<br>Can include: gait evaluation and training, transfer training, therapeutic treatment to ensure patient safety. Rec. 6169 | Functional impairment severe Rec. 1722 |
|  | Symptoms must be persistent or repetitive for 6 months. Rec. 1722 |
| Continued care ends at SNF when services are for custodial care, patient unwilling to cooperate, routine medical administration, Rec. 6169. | Continued care Requires symptom requirements like aggressive or assaultive behavior, homicidal ideation, or nonsuicidal self-injury to occur during the previous week. Rec. 1724-1726 |

---

[9] *Rodriguez v. City of New York,* 72 F.3d 1051, 1061 (2d Cir. 1995).
[10] *Jonathan Z. v. Oxford Health Plans*, No. 2:18-cv-00383-JNP-JCB, 2022 U.S. Dist. LEXIS, *James F. ex rel. C.F. v. Cigna Behavioral Health, Inc.*, No. 1:09CV70 DAK, 2010 U.S. Dist. LEXIS 136134, at *13-14 (D. Utah Dec. 23, 2010).

PLAINTIFF'S SUPPLEMENTAL
BRIEFING - Page 4

**BRIAN S. KING,** ATTORNEY AT LAW
420 East South Temple; Suite 420
Salt Lake City, UT 84111
Tel. (801) 532-1739 Fax (801)532-1936

Assuming the Court finds a MHPAEA violation, the Court in equity can interpret the InterQual criteria by using the standards applicable to Premera's skilled nursing facilities. In that way the Court's de novo review would be limited to the record that Premera considered and stays within the guardrails established in *Collier*.

## II. IF THE COURT DETERMINES TO USE OTHER GUIDELINES THE PLAINTIFF RECOMMENDS THE CASII.

In the event the Court determines that in order to conduct a proper de novo review it must look to criteria beyond the InterQual guidelines, the CASII are the best alternative guidelines to use.[11] Nevertheless, this step can be pursued if the original determination was "conducted under a misconception of the law" and therefore "it is necessary for the case to be reevaluated in light of the proper legal definitions."[12] The CASII could provide the additional light necessary to determine the question of generally accepted standards of medical care.

First, during the prelitigation appeal process, Plaintiff directed Premera to the American Academy of Child and Adolescent Psychiatry or AACAP as an authority for the "clinical best practices and appropriate interventions for patients struggling with [Reactive Attachment Disorder]."[13] AACAP is the organization that developed the CASII.[14] By using the CASII the Court would not impose a set of guidelines for which Premera had no reasonable expectation based upon the information exchanged during the prelitigation process. And because it was the Plaintiff herself who mentioned AACAP as part of the preltigation appeal, it would be difficult for her to argue that the CASII represented a "new rationale" imposed by the Court. As a result,

---

[11] *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 944 (9th Cir. 1995).
[12] *Id.*
[13] Rec. 20.
[14] Exhibit A, p. 2 of 110.

PLAINTIFF'S SUPPLEMENTAL
BRIEFING - Page 5

**BRIAN S. KING, ATTORNEY AT LAW**
420 East South Temple; Suite 420
Salt Lake City, UT 84111
Tel. (801) 532-1739 Fax (801)532-1936

the CASII guidelines stay closest to the direction from *Collier* and are the best alternative.

Second, the CASII is the only instrument that Plaintiff has found where another court[15] has determined it was necessary and appropriate to use an alternative set of guidelines because the guidelines the insurer had used deviated from generally accepted standards of medical practice. At the outset Plaintiff notes that the *Wit* decision has been overturned by the Ninth Circuit including an analysis regarding the effect of generally accepted standards in plan language.[16] Nonetheless, the Plaintiff identifies the *Wit* case, because it is a case where the court determined that alternative guidelines were necessary in order to evaluate the claim. The reference to *Wit* complies with the terms of the Court's order to "include in their briefing any cases on de novo review where courts have looked outside the administrative record in defining 'generally accepted standards of medical practice (or similar terms)."[17]

In *Wit*, the court found that there "is no dispute that . . . CASII reflect generally accepted standards of care for determining the most appropriate level of care for children and adolescents."[18] That conclusion was based on evidence from various experts and sources.[19] The Court further went on to define various generally accepted standards of care.[20]

Plaintiff has included as an exhibit to this supplemental briefing a copy of the CASII together with its User Manual. That version shows that it went into effect, September of 2018. Because the treatment at took place in 2019 this would be the version of the CASII that was in

---

[15] *Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2019 U.S. Dist. LEXIS 35205, at *60-61 (N.D. Cal. Feb. 28, 2019).
[16] *Wit v. United Behav. Health*, 58 F.4th 1080 (9th Cir. 2023).
[17] ECF Doc. 67.
[18] *Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2019 U.S. Dist. LEXIS 35205, at *60-61 (N.D. Cal. Feb. 28, 2019).
[19] *Id.* at *56-57.
[20] *Id.* at *68-87.

**BRIAN S. KING,** ATTORNEY AT LAW
420 East South Temple; Suite 420
Salt Lake City, UT 84111
Tel. (801) 532-1739 Fax (801)532-1936

effect at the time. Any alternative guideline should be from the time that the acts in question were performed.[21]

**CONCLUSION**

In order to avoid the introduction of a new rationale that could subject the Court's decision to reversal, the preferred course of action would be to resolve the case on the basis of the documents found in the prelitigation record before the Court. The Court can interpret the InterQual criteria de novo and consistent with MHPAEA. In the event the Court determines that additional criteria are required to conduct a de novo review, the Court could employ the CASII which are recognized as incorporating generally accepted standards of medical practice.

RESPECTFULLY SUBMITTED this 6th day of March 2023.

       */s/ Eleanor Hamburger*
Eleanor Hamburger, WSBA #26478
SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303
Fax (206) 223-0246
Email: ehamburger@sylaw.com

       */s/ Brian S. King*
Brian S. King, *Admitted Pro Hac Vice*
BRIAN S. KING, P.C.
420 E. South Temple, Suite 420
Salt Lake City, UT 84111
Tel. (801) 532-1739
Fax (801) 532-1936
Email: brian@briansking.com

---

[21] *Barrett v. United States*, 660 F. Supp. 1291, 1297 n.4 (S.D.N.Y. 1987).

PLAINTIFF'S SUPPLEMENTAL BRIEFING - Page 7

**BRIAN S. KING, ATTORNEY AT LAW**
420 East South Temple; Suite 420
Salt Lake City, UT 84111
Tel. (801) 532-1739  Fax (801)532-1936

## CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury under the laws of the State of Washington and the United States, that on the 6th day of March 2023, the foregoing document was presented to the Clerk of the Court for filing and uploading to the Court's CM/ECF system. In accordance with the ECF registration agreement and the Court's rules, the Clerk of the Court will send email notification of this filing to all attorneys in this case.

DATED: March 6, 2023

/s/ Brian S. King
Brian S. King, *pro hac vice*

PLAINTIFF'S SUPPLEMENTAL
BRIEFING - Page 8

**BRIAN S. KING, ATTORNEY AT LAW**
420 East South Temple; Suite 420
Salt Lake City, UT 84111
Tel. (801) 532-1739  Fax (801)532-1936